**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1957
_____

In re: ENERGY FUTURE HOLDINGS CORP.
a/k/a TXU Corp., a/k/a Texas Utilities, et al.,
Debtors


DELAWARE TRUST COMPANY, as TCEH First Lien Indenture Trustee,
Appellant

v.

MORGAN STANLEY CAPITAL GROUP, INC.;
WILMINGTON TRUST, N.A., as First Lien Collateral Agent and First Lien
Administrative Agent
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Nos. 1-16-cv-00189 and 1-17-cv-00540)
District Judge: Honorable Richard Andrews
_____

Argued March 21, 2019

Before: SHWARTZ, KRAUSE, and BIBAS, *Circuit Judges*

(Filed: June 19,2 019)

GianClaudio Finizio
Neil B. Glassman
Bayard P.A.
600 North King Street
Suite 400
Wilmington, DE 19801

Jeremy C. Hollembeak
Michael S. Kim [ARGUED]
Benjamin J. Sauter
Andrew D. Wang
Kobre & Kim
800 Third Avenue
Floor 6
New York, NY 10022
        *Counsel for Appellant*

Ashley R. Altschuler
R. Craig Martin
DLA Piper
1201 North Market Street
Suite 2100
Wilmington, DE 19801

Thomas J. Curtin
Ellen M. Halstead
Howard R. Hawkins, Jr.
Michele Maman
Cadwalader Wickersham & Taft
200 Liberty Street
One World Financial Center
New York, NY 10281

Mark C. Ellenberg [ARGUED]
Cadwalader Wickersham & Taft
700 Sixth Street, N.W.
Washington, DC 20001

Scott B. Czerwonka
Wilks Lukoff & Bracegirdle
4250 Lancaster Pike
Suite 200
Wilmington, DE 19805

*Counsel for Appellee Morgan Stanley Capital Group Inc.*

George A. Davis
Latham & Watkins
885 Third Avenue
Suite 1000
New York, NY 10022

Michael D. DeBaecke
Ashby & Geddes
500 Delaware Avenue
P.O. Box 1150, 8th Floor
Wilmington, DE 19899

Peter M. Friedman
O'Melveny & Myers
1625 I Street, N.W.
Washington, DC 20006

Jonathan Rosenberg
Daniel S. Shamah
O'Melveny & Myers
7 Times Square
Time Square Tower, 33rd Floor
New York NY 10036

Thomas R. Hooper
Mark D. Kotwick
Seward & Kissel
One Battery Park Plaza
New York, NY 10004

Joseph H. Huston, Jr.
Stevens & Lee
919 North Market Street
Suite 1300
Wilmington, DE 19801
    *Counsel for Appellee Wilmington Trust N.A.*

Mark E. Felger
Simon Fraser
Cozen O'Connor
1201 North Market Street

Suite 1001
Wilmington, DE 19801

Humayun Khalid
Thomas J. Moloney [ARGUED]
Sean A. O'Neal
Cleary Gottlieb Steen & Hamilton
One Liberty Plaza
New York, NY 10006
        *Counsel for Appellee J. Aron & Company*

Bradley R. Aronstam
Nicholas D. Mozal
Ross Aronstam & Moritz
100 South West Street
Suite 400
Wilmington, DE 19801

Adam B. Banks
Weil Gotshal & Manges
767 Fifth Avenue
New York, NY 10153
        *Counsel for Appellee Titan Investment Holdings LP*

_____

OPINION[*]
_____

BIBAS, *Circuit Judge*.

After filing for bankruptcy, a subsidiary of Energy Future Holdings made payments and distributions to two groups of creditors. Now these creditors disagree about how to split up these assets. The 2011 creditors—who brought this case—rely on a contract to support their proposed allocation. But that contract applies only to collateral or proceeds of a sale of collateral conducted by the collateral agent.

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

4

The payments and distributions here are neither. Payments and distributions made instead of collateral are not themselves collateral. And a bankruptcy court is not a collateral agent. So payments and distributions ordered by a bankruptcy court are not proceeds of a sale conducted by a collateral agent. We will affirm the District Court's dismissal.

## I. BACKGROUND

### A. The debts and the intercreditor agreement

Energy Future Holdings is an electric company in Texas. Its subsidiary, Texas Competitive Electric Holdings Company LLC, owes money to two groups of creditors: one group with debt from 2007, and a second group with debt from 2011. The 2007 creditors' debt had a lower interest rate than that of the 2011 creditors. The same collateral secures both groups' debt. That collateral includes almost all the subsidiary's assets. Neither group of creditors takes precedence over the other; their claims to the collateral have equal priority.

An intercreditor agreement governs the relationship between the two groups of creditors. This agreement has a waterfall provision. A waterfall provision sets the order in which parties will receive benefits from an asset pool. Here, the provision describes how to distribute collateral if Energy Future's subsidiary defaults on its debt. If the subsidiary defaults, and if the creditors must collect on the collateral or sell it to make themselves whole, then the waterfall provision is triggered. And according to the 2011 creditors, the provision gives them a greater share of the payments and distributions at issue.

The waterfall provision does not govern every asset the creditors receive. It applies only to "[1] Collateral or [2] any proceeds thereof received in connection with the sale or other

5

disposition of, or collection on, such Collateral upon the exercise of remedies under the Security Documents by the Collateral Agent." App. 196. The collateral agent is now Wilmington Trust. It can enforce the creditors' claims on the collateral by, for instance, foreclosing on it, selling it, and distributing the profits to the creditors.

## B. The bankruptcy

In April 2014, Energy Future and its subsidiary filed for bankruptcy. In bankruptcy, the subsidiary needed to use the collateral to keep running its business. But using the collateral risked depleting it. To protect against this risk, the bankruptcy court ordered the subsidiary to make monthly adequate-protection payments to the creditors. The subsidiary began making these payments about a month after filing for bankruptcy.

More than two years later, the bankruptcy court approved the subsidiary's bankruptcy plan. Before the court approved the plan, a majority of the 2007 and 2011 creditors voted for it. The plan explained in detail how the subsidiary would come out of bankruptcy without its past debt. It called for a corporate restructuring of the subsidiary, including several complex exchanges of its assets. All the assets the subsidiary owned as a result of the restructuring would be "free and clear of all Liens, Claims, charges, Interests, or other encumbrances." App. 5387.

As part of the plan, both the 2007 and 2011 creditors gave up any claims they had to the collateral. In exchange, the plan promised the creditors three types of plan distributions: (1) cash; (2) stock in a newly formed company; and (3) the right to receive tax benefits that the government owed the subsidiary.

6

The 2007 and 2011 creditors dispute how to split up both: (a) the adequate-protection payments and (b) the three types of plan distributions listed above.

## C. Procedural history

Delaware Trust Company filed this lawsuit on behalf of the 2011 creditors. And three of the 2007 creditors—Morgan Stanley Capital Group, J. Aron & Company, and Titan Investment Holdings—intervened as defendants.

The 2007 creditors moved for judgment on the pleadings. They argued that each creditor's share of the payments and distributions should be based on what the subsidiary owed that creditor when the subsidiary went bankrupt. And bankruptcy law supports their argument. 11 U.S.C. §502(b)(2) (disallowing claims for post-bankruptcy interest).

The 2011 creditors wanted a different allocation. They argued that, under the waterfall provision, each creditor's share should be based on what the subsidiary would have owed that creditor when the subsidiary made the payments and distributions. This allocation would favor creditors with higher interest rates because it would include interest that accrued after the subsidiary filed for bankruptcy. Since the court did not approve the plan until more than two years after the bankruptcy filing, the parties estimate that this approach would allocate about $90 million more to the 2011 creditors.

The bankruptcy court granted the 2007 creditors' motion and dismissed Delaware Trust's complaint. The District Court affirmed. Delaware Trust appeals this order on behalf of the 2011 creditors.

To win, Delaware Trust must show both that the waterfall provision applies to these payments and distributions *and* that the waterfall provision allocates these assets in a

7

manner favorable to them. We need not reach the latter question because we hold that the waterfall provision does not apply here.

### D. Standard of review and governing law

A defendant is entitled to judgment on the pleadings when, taking all the facts in the complaint as true, the plaintiff has no right to relief. *Allah v. Al-Hafeez*, 226 F.3d 247, 249–50 (3d Cir. 2000). Here, both parties agree on the facts. So this case depends on a legal issue: how to interpret the intercreditor agreement.

We review a bankruptcy court's interpretation of a contract de novo. *In re: Energy Future Holdings Corp.*, 842 F.3d 247, 253 (3d Cir. 2016). We interpret the intercreditor agreement under New York law because it has a New York choice-of-law provision. *Id.*; *Ministers & Missionaries Benefit Bd. v. Snow*, 45 N.E.3d 917, 919 (N.Y. 2015). Under New York law, we look to the text of the contract to determine the parties' intent. *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002). So our reasoning depends on the particular wording before us.

## II. THE PAYMENTS AND DISTRIBUTIONS ARE NOT COLLATERAL UNDER THE WATERFALL PROVISION

The waterfall provision would apply to the adequate-protection payments and plan distributions if they were collateral. But they are not.

The 2011 creditors argue that the payments and distributions are collateral because almost all of the subsidiary's assets are collateral. They point to the definitions of collateral in the parties' loan agreements and in one of the bankruptcy court's orders.

But not every payment from the subsidiary's assets is a payment of collateral. A payment of collateral reduces the amount of money owed on a debt. The subsidiary, however, made the adequate-protection payments in exchange for the creditors' agreement to let the subsidiary use the collateral for other purposes. The adequate-protection payments did not decrease the amount of money the subsidiary owed on the debts. So, as the bankruptcy court correctly held, the adequate-protection payments are not payments of collateral. *In re: Energy Future Holdings Corp.*, 546 B.R. 566, 581 (Bankr. D. Del. 2016).

And the plan distributions are made from assets on which the creditors had no liens. The plan specified that the creditors' liens did not extend to any assets the subsidiary had because of the plan. The plan distributions were made from those assets. And bankruptcy law confirms that assets acquired after bankruptcy generally are "not subject to any lien resulting from" a prior agreement. 11 U.S.C. § 552(a). Thus, the plan distributions are not distributions of collateral.

### III.  THE PAYMENTS AND DISTRIBUTIONS ARE NOT PROCEEDS UNDER THE WATERFALL PROVISION

The waterfall provision would also cover the payments and distributions if they were proceeds "received in connection with the sale or other disposition of, or collection on, such Collateral upon the exercise of remedies under the Security Documents by the Collateral Agent." App. 196. This language imposes two requirements: First, the proceeds must be from a sale, collection, or disposition of collateral. Second, that sale, collection, or disposition must be part of a remedy implemented by the collateral agent (Wilmington

9

Trust). Neither the adequate-protection payments nor the plan distributions satisfy both requirements.

The adequate-protection payments do not meet the first requirement. The 2011 creditors do not identify a sale, collection, or disposition of collateral that happened before those payments. Instead, the 2011 creditors argue that the payments are proceeds of the collateral because they were supposed to offset the collateral's diminution in value. But this argument misses the point. Proceeds cannot be from a sale when there was no sale. So without a sale, collection, or disposition of the collateral, the adequate-protection payments cannot be proceeds under the waterfall provision.

While the plan distributions might meet the first requirement (a sale or disposition), they do not meet the second (part of the collateral agent's remedy). The 2011 creditors argue that the plan distributions are proceeds of the subsidiary's corporate restructuring. They argue that the restructuring amounted to a sale or disposition of collateral. But even if it did, it was not part of a remedy implemented by the collateral agent.

The 2011 creditors claim that the collateral agent's participation in the bankruptcy counts as a remedy. But even if the collateral agent's actions in the bankruptcy were a remedy, the restructuring was not a part of this remedy. The creditors, not the collateral agent, voted for the restructuring. And the bankruptcy court approved it. This corporate restructuring, blessed by the bankruptcy court, is a far cry from a collateral agent's typical remedy: selling the collateral at a foreclosure sale. Because the restructuring was not a remedy implemented *by the collateral agent*, the plan distributions are not proceeds under the waterfall provision.

10

* * * * *

Because the payments and distributions are neither collateral nor proceeds under the waterfall provision, the provision does not apply. So each creditor is entitled to payments and distributions based on what the subsidiary owed it when the subsidiary filed for bankruptcy. We will thus affirm the District Court's dismissal.

* * * * *